The opinion of the Chief Justice, and Duncan and Huston, Js., was delivered by
Duncan, J.
The objection to this registry is the want of occupation of James Maxwell, the master, who was an associate justice of the Court of Common Pleas of Franklin county, and is described as James Maxwell, esq. The act requires the possessor of any child, born after the 1st of March, 1780, and who by the act for the gradual abolition of slavery, would have been liable to serve until the age of twenty-eight years, to declare before the 1st of Jlpril, 1789, or within six months after the birth of any such child, to the clerk of the sessions, &c., the name, surname, occupation, or profession of any such possessor, and of the county, township, district, or ward in which he resides, and the age, name, and sex of every such child, under the penalty of forfeiting and losing of every such child, and his becoming immediately free. This regulation is in the same words, as in the act for the gradual abolition of slavery.
This court is not now called on for the first time to give a construction to these enactments, and this objection itself has been considered and passed on very lately in this court, and I would not disturb these decisions after a contemporaneous and continued construction for nearly half a century. In a little while there will not remain any one who can be held either as slave or servant in this state, on account of his birth. These humane laws, so honourable to our state, recognize a property in the. master as to slaves then in being, and the act of 1780 secures to the master the service of the child of his female slave until he is twenty-eight years of age. The act requiring their registry did not pass until 1788, and for the wise purpose of ascertaining that class of persons of colour from the children of free people of colour, prescribes a manner of registering intended only to identify the master and the child. Courts have not required a rigid adherence to the letter in the description of the master; for the owner of a slave entering his negro in the county where he lives without expressing the county *38 in the registry, this registry has been held valid. Cook v. Neff, 3 Yeates, 259. So, in The Commonwealth v. William Findlay, Esq., it was held that the registry of a negro as a slave, without adding for life, is good. 3 Yeates, 261. In both cases, there was a departure from the letter, though an adherence to the spirit of the law; and for this reason, because, as the court says, all the evils intended to be guarded against by the act for the gradual abolition of slavery, are prevented. In the case of Belinda v. Wilson, 3 Serg. & Rawle, 397, it was decided that the omission of the town and county in which the master resided, did not avoid the registry, if the slave were registered in the county in which the master resided; and in that case the occupation of the master was likewise omitted. He was described as esquire, and proof was admitted that the master had no occupation. There Belinda was discharged, because the sex was not inserted in the return, and there the Chief Justice observed, 'that he was not for shaking former decisions, and as far as they had gone they had become a rule of property, and to the extent now contended for by the master decisions have gone. In a ease not yet reported, decided by the court in September, 1825,— The Commonwealth ex relatione Annette, a mulatto Girl, v. John Irvine,—the entry was by the possessor, Ileckart Wallace, yeoman: held, that yeoman was a sufficient description. Yeoman is neither occupation nor possession; under the statute of addition, it is a good addition, and the most common one. James Maxwell’s commission as an associate justice conferred on him the distinction of esquire. It was not a title conferred on him by courtesy, as it now is on almost every body. If it had been a registry by his name of office, associate justice, the same objection would have laid, viz. that it was not an . occupation or profession. The legislature used these terms certainly in the very broadest and most general sense; but they well knew there were many holding slaves, who had neither occupation nor profession; many widows, many maiden ladies; besides many men of fortune who never had any occupation or profession, and many others who had retired from all business, and every occupation. It never was intended their slaves should be free, because they had neither occupation nor profession. Esquire would, with more certainty, designate this James Maxwell. Squire Maxwell was his general appellation in the county, not James Maxwell, farmer, where almost the occupation of the whole community was that of farmer. I have examined the returns in this county in the book of registiy, and in every instance where the possessor was a justice of the peace and a farmer, his occupation of farmer is not inserted, but his legal addition esquire.- In one case, where an attorney, while he continued at the bar, registered the children of his slave by his occupation or profession of attorney, yet when he was appointed President of the Court of Common Pleas he designated those born afterwards by his title of esquire.
*39 If description of the person was the design of'the legislature, and they could have no other possible reason by the provision, esquire, the legal title, the name by which he was generally called and known would be more appropriate. By this name he would be distinguished from other James Maxwells, and certainly esquire is more descriptive of a person than yeoman, which has been held a sufficient description. Esquire, even in an act of attainder, would be a good addition and description, where the person attainted, by his commission was entitled to that appellation; and this case shows how much more certain this description of esquire is than farmer, for in this same township and county there is another James Maxwell, farmer.
It is the opinion of a majority of the court, that in the spirit of the former decisions on these acts of assembly, the return is legally registered, and he is remanded to the custody of his master.
Gibson and Rogers, Js., dissented.
Fompey remanded.